**SHARON TUBE COMPANY,**
Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (BUZARD),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.

Decided June 23, 2006.

Publication Ordered Sept. 28, 2006.

Mary Ann C. Acton, Pittsburgh, for petitioner.

Susan Paczak and Sandra W. Kokal, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Sharon Tube Company (Employer) petitions for review of the October 28, 2005, order of the Workers' Compensation Appeal Board (WCAB), which reversed the decision of a workers' compensation judge (WCJ) and granted the reinstatement petition filed by Daniel T. Buzard (Claimant). We affirm.

Claimant suffered a work-related injury on November 13, 1995, and he received benefits pursuant to a WCJ's award. On Monday, July 21, 2003, Claimant returned to work with a loss of wages, and Employer modified Claimant's benefits to reflect his earned wages.[1] Claimant's treating

---

1. No supplemental agreement was filed at the time benefits were modified. Section 413(b) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 774.1, provides in part that any insurer who decreases payments of compensation without submitting an agreement or supple-

physician, John G. Wassil, III, M.D., took Claimant off work the following Monday, July 28, 2003. On August 11, 2003, the parties executed a Supplemental Agreement (form LIBC–337) acknowledging a recurrence of Claimant's total disability effective July 28, 2003. In pertinent part, the Supplemental Agreement states:

Further matters agreed upon:

As of 7/28/2003, disability recurred total in character [and] compensation shall be payable to the said employee at the rate of $509.00 per week less 20% attorney fee. Temporary partial benefits were issued through 8/10/03, [and] an adjustment check has been sent to make up for the difference owed to both the employee [and] attorney.

(R.R. at 49a–50a.)

Thereafter, on October 8, 2003, Employer filed a modification petition, seeking a reduction of Claimant's benefits effective July 21, 2003, based upon Claimant's return to work. The petition indicated that Claimant had stopped working as of July 28, 2003, but alleged that "Claimant has earning capacity." (R.R. at 2a–3a.) In his answer to Employer's petition, Claimant asserted that, in the Supplemental Agreement, Employer admitted that Claimant again became totally disabled as of July 28, 2003, and, therefore, Employer was estopped from seeking modification for any period other than July 21–27, 2003. (R.R. at 4a–5a.)

During the first hearing before the WCJ, Claimant moved to dismiss the modification petition, arguing that Employer was bound by the admission in the Supplemental Agreement that Claimant's total disability had recurred on July 28, 2003.

In response, Employer asserted that the Supplemental Agreement merely reflected Employer's obligation to resume paying total disability benefits based on the fact that Claimant went off work. The WCJ initially agreed with Claimant, (R.R. at 9a), but, thereafter, he denied Claimant's motion to dismiss by interlocutory order dated April 8, 2004.

In support of its modification petition, Employer offered into evidence the deposition testimony of William M. Trachtman, M.D., who examined Claimant on July 16, 2003. Dr. Trachtman opined that Claimant was capable of performing sedentary work, with some restrictions, but he conceded that he could not comment on Claimant's condition after July 16, 2003. (R.R. at 116a–28a.) Employer also introduced the deposition testimony of Jeffrey M. Moldovan, D.O., who examined Claimant most recently on June 12, 2003, and diagnosed Claimant with chronic neck pain. Dr. Moldovan testified that Claimant should have completely recovered from his work injury, and he stated that the basis for his June 2003 diagnosis was due to symptom magnification on Claimant's part. (R.R. 146a–53a.)

Claimant testified before the WCJ and described his brief return to work. Claimant stated that he continues to have pain, has trouble sleeping and does not believe he can return to work. Claimant also offered the deposition testimony of Dr. Wassil, who testified that his present diagnosis is cervical disk displacement with chronic bilateral C5–6 radiculopathy, cervical degenerative disk disease with spinal stenosis and cervical myofascial pain syndrome. Dr. Wassil opined with a reason-

---

mental agreement shall be subject to penalty as provided in section 435 of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 991. The record reflects that Employer sent Claimant a supplemental

agreement, signed by Employer's representative and dated July 25, 2003, but Claimant did not sign that agreement. (R.R. at 8a–9a; 44a–47a.)

able degree of medical certainty that Claimant is not capable of performing any work and that the cause of Claimant's condition is the 1995 work injury. (R.R. at 72a–76a.)

The WCJ rejected Claimant's testimony, and he accepted the testimony of Drs. Trachtman and Moldovan as more credible and persuasive than that of Dr. Wassil. Based on these credibility determinations, the WCJ granted Employer's modification petition.

On appeal, the WCAB reversed. The WCAB reasoned that, contrary to Employer's contention that it had issued the Supplemental Agreement solely to reflect the fact that Claimant had stopped working, Employer indicated in the Supplemental Agreement that Claimant's benefits were being reinstated because Claimant's total disability had recurred. The WCAB concluded that, because the parties executed the Supplemental Agreement acknowledging that Claimant was again totally disabled, and the Supplemental Agreement was not modified or set aside after its issuance, the Supplemental Agreement was binding.

The WCAB further concluded that, in order for Employer to succeed on its modification petition, Employer was required to prove that Claimant had regained some or all of his earning capacity after July 28, 2003, the date Employer acknowledged that Claimant again became totally disabled, and that work was available within Claimant's limitations. Noting that Employer failed to present medical evidence related to Claimant's condition or evidence of available work after that date, the WCAB reversed the WCJ's decision.

2. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are sup-

On appeal to this court,[2] Employer again argues that the Supplemental Agreement only reflected that Claimant stopped working as of July 28, 2003, i.e., that Employer no longer had a legal basis to withhold benefit payments to Claimant. Relying on *Norris v. Workers' Compensation Appeal Board (Hahnemann Hospital)*, 726 A.2d 1 (Pa.Cmwlth.), *appeal denied*, 560 Pa. 714, 743 A.2d 925 (1999), Employer asserts that the Supplemental Agreement does not preclude Employer from seeking to modify benefits payable prior to the date of the Supplemental Agreement. We disagree.

Section 407 of the Act provides that all notices of compensation payable, agreements for compensation and supplemental agreements for the modification, suspension, reinstatement or termination of compensation "shall be valid and binding unless modified or set aside as hereinafter provided." 77 P.S. § 731. Section 413(a) of the Act provides that a WCJ "may, at any time, modify ... an original or supplemental agreement ... upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased...." 77 P.S. § 772. Employer relies on the phrase "at any time" to argue that the WCJ is empowered to modify an agreement *retroactively*. However, in *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983), our Supreme Court explained:

> Under [section 413(a) ], notices of compensation payable, agreements, and awards ... are all treated the same. We have held that under [section 413(a) ], the burden is on a petitioner to prove that an employe's disability has increased or decreased *after* the date of

ported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

a referee's award. Likewise, in the case of an agreement or a notice of compensation payable, a petitioner has the burden of showing that the employe's disability has changed *after* the date of the agreement or the notice of compensation payable.

*Id.* at 182, 465 A.2d at 971 (citations omitted).[3]

Employer's reliance on *Norris* is misplaced. In *Norris*, a claimant who was receiving benefits pursuant to a notice of compensation payable (NCP) returned to work on June 9, 1994, at reduced hours. On June 17, 1994, the employer filed termination, suspension and modification petitions, alleging that the claimant had fully recovered from her work related injury as of March 29, 1994. On five occasions between September 1994 and February 1995, while the employer's petitions were pending, the parties executed supplemental agreements modifying the NCP to reflect changes in the claimant's earnings resulting from the increased hours she was able to work. Following hearings on the employer's petitions, the WCJ concluded that the employer had met its burden of proving that the claimant had fully recovered from her work injury as of March 29, 1994, and granted the employer's termination petition. The WCAB affirmed that decision.

The claimant appealed, arguing, *inter alia,* that the supplemental agreements issued during the pendency of the litigation precluded the employer from arguing that the claimant had fully recovered because, in the supplemental agreements, the parties had stipulated that the claimant was entitled to partial disability benefits based upon her return to work. Disagreeing, our court stated in *Norris* that, "Such a stipulation, *in this case at least,* was nothing more than an acknowledgment of an undisputed fact, entitling Claimant to partial disability benefits." *Norris,* 726 A.2d at 3 (emphasis added).

Contrary to Employer's assertion, as reflected by the restrictive language emphasized above, the court in *Norris* did not hold that section 413(a) authorizes a WCJ to modify a supplemental agreement retroactively. Significantly, the employer in *Norris* executed supplemental agreements *after* filing a termination petition and *during the course of litigation* on the various petitions. Essentially, in *Norris,* the employer's prior filing and continued litigation of its termination, suspension and modification petitions belied the claimant's assertions that the supplemental agreements constituted stipulations of contrary facts. Here, however, after modifying Claimant's benefits upon his return to work, Employer executed a Supplemental Agreement specifically acknowledging that Claimant's total disability had recurred, and Employer waited almost two months before filing a petition for modification. Moreover, as noted by the WCAB, although Employer claimed that it issued the Supplemental Agreement solely to reflect the fact that Claimant had stopped working, Employer presented no evidence that it intended to reinstate Claimant's benefits for that reason alone or that it

---

3. See, also, *Mancini v. Workmen's Compensation Appeal Board,* 64 Pa.Cmwlth. 484, 440 A.2d 1275 (1982), which also involved a modification petition under section 413(a) of the Act and was cited with approval in *Beissel.* In *Mancini,* our court stated that a party seeking to modify an award or agreement "must produce competent evidence of a change in the [claimant's] physical condition *occurring since the date of the award or agreement."* Id. at 1277 (emphasis added). We further stated that, in a modification petition, "the sole issue is whether the claimant's condition has changed *since* the earlier award." Id. at 1278 (emphasis added).

contested Claimant's entitlement to total disability benefits as of July 28, 2003.

Employer contends that the WCAB's holding renders section 413(a) of the Act meaningless; however, as previously stated, section 413(a) authorizes the WCJ to modify an agreement only upon proof that a claimant's condition has changed *since* the date of the agreement.[4] *Beissel.* Moreover, we conclude that adopting Employer's argument would nullify the legislative intent expressly set forth in section 407 of the Act that all agreements for compensation, including supplemental agreements, shall be considered valid and binding until properly modified.

Accordingly, we affirm.

### ORDER

AND NOW, this 23rd day of June, 2006, the order of the Workers' Compensation Appeal Board, dated October 28, 2005, is hereby affirmed.

---

4. We note that the first paragraph of section 413(a) of the Act, 77 P.S. § 771, authorizes a WCJ to modify or set aside an agreement upon proof that the agreement was based upon a material mistake of fact or law. *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital)*, 830 A.2d 636 (Pa.Cmwlth.2003). Apparently, Employer mistakenly believed that executing the Supplemental Agreement was the exclusive legal method by which Employer could comply with its obligations under the Act and still preserve its right to pursue a modification of benefits. However, Employer does not argue that it is entitled to relief based on any mistake that existed at the time the Supplemental Agreement was executed.

We note that section 413(d) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 774.3, permits an employer to modify compensation payments made during the time the claimant has returned to work at earnings less than his pre-injury wages upon written notification by the insurer to the employee and the department on a form prescribed by the department. Thus, Employer could have unilaterally modified compensation payments based upon Claimant's return to work. After that, in order for total compensation payment to resume, Claimant would have had to contest Employer's notice of modification or file a reinstatement petition.