IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Martz Coach Company,        :
             Petitioner         :
                          :
          v.               :  No. 1555 C.D. 2015
                          :  Submitted:  March 24, 2016
Workers' Compensation Appeal     :
Board (Avila),               :
             Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: April 13, 2017

         Frank Martz Coach Company (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted penalties to Julio Avila (Claimant).  In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that a Supplemental Agreement by which Employer agreed to pay Claimant total disability benefits, unless or until modified by order of a WCJ, precluded Employer from thereafter issuing a Notice of Compensation Denial.  Holding that Employer's unilateral termination of compensation benefits violated the Workers' Compensation Act,[1] the Board affirmed the WCJ's decision to award penalties.  Concluding that the record is inadequate to conduct appellate review, we vacate and remand.

         On January 19, 2013, Claimant sustained a work injury. On February 5, 2013, Employer issued a Notice of Temporary Compensation Payable (NTCP)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

that described Claimant's work injury of January 19, 2013, as a lumbar strain that occurred when "[Claimant] went to pull the latch for the engine compartment panel and strained his lower back." Reproduced Record at 3a (R.R. __).[2] Employer began paying Claimant compensation benefits at the rate of $824.84 per week. Employer's NTCP stated that the 90-day temporary compensation period began on January 24, 2013, and would end on April 23, 2013.

On March 12, 2013, Claimant and Employer entered into a "Supplemental Agreement for Compensation for Disability as Permanent Injury," which contained several terms relevant to this appeal. R.R. 5a-6a. First, Claimant agreed to a reduction of disability benefits from February 11, 2013, through February 25, 2013, during which period he worked in a light duty position. Second, Employer agreed to resume the payment of total disability on February 28, 2013, when his work injury recurred. Finally, Employer agreed to pay total disability benefits into the future for an "uncertain" number of weeks. R.R. 6a.

On April 22, 2013, Employer issued a Notice Stopping Temporary Compensation (NSTC) and a Notice of Compensation Denial (NCD). Employer did so for the stated reason that the medical information provided by Claimant was inadequate to establish a work injury. In response, on April 26, 2013, Claimant filed a penalty petition, contending that Employer violated the Act by unilaterally terminating his disability compensation. The penalty petition asserted that the 90-day-period of temporary compensation expired on April 19, 2013, because Claimant was injured on January 19, 2013. Thus, Employer's NTCP converted

---

[2] Because this case turned entirely on the legal significance of Employer's agreement to pay Claimant disability compensation in a Supplemental Agreement, there is no evidentiary record on Claimant's job title, or when the injury was reported.

2

automatically to an NCP on April 19, 2013, making Employer's NCD of April 22, 2013, untimely. Claimant sought an immediate reinstatement of disability compensation and an award of penalties.

The WCJ convened a hearing on May 28, 2013. The WCJ began the hearing by marking as exhibits filings that had been made with the Bureau of Workers' Compensation (Bureau). Exhibit No. 2 was the Supplemental Agreement, signed by Claimant and Employer's claims representative.[3] R.R. 5a-6a. Both Claimant's counsel and Employer's counsel stated they did not know about the Supplemental Agreement. Claimant then amended his penalty petition to add the contention that the Supplemental Agreement precluded Employer from unilaterally terminating compensation.

Employer's counsel responded with two points. First, Employer argued that although Claimant was injured on January 19, 2013, he continued to work. On January 24, 2013, Claimant took a vacation day.[4] Employer argued that the 90-day duration of the NTCP did not begin until January 24, 2013. Second, Employer stated that because it had just learned of the Supplemental Agreement, its significance was unclear. Employer asked for time to research the issue.

The WCJ gave the parties two weeks to brief the significance of the Supplemental Agreement. The WCJ stated that should the Supplemental Agreement be found to be controlling, then he would grant the penalty petition. If

---

[3] Other exhibits included the NTCP, Bureau Exhibit No. 1; the NSTC, Bureau Exhibit No. 3; and the NCD, Bureau Exhibit No. 4.

[4] These recitals cannot be confirmed or refuted because there is no evidentiary record. This is true for both Employer and Claimant.

3

not, he would schedule a hearing to take evidence on the question of when the 90-day period of temporary compensation began.

On June 17, 2013, the WCJ issued a decision granting Claimant's penalty petition; striking Employer's NSTC and the NCD; and reinstating total disability compensation to Claimant. The WCJ acknowledged that Employer's NTCP accepted liability for Claimant's back injury only on a temporary basis. However, by executing the Supplemental Agreement, Employer fully accepted liability as of March 12, 2013. At that point, Claimant's benefits could not be terminated unilaterally by Employer but only by agreement of the parties or order of a WCJ. Accordingly, the WCJ awarded a penalty equal to 30% percent of the outstanding compensation benefits as of the date of the order.

Employer appealed to the Board. It argued that the Supplemental Agreement was not controlling, as held by the WCJ. In support, Employer offered a notice from the Bureau stating that the Supplemental Agreement was an "Improperly Filed Form." R.R. 7a. The notice stated as follows:

> Claim is in a temporary status. A Supplemental Agreement (LIBC-337) cannot be used to correct/amend a Notice of Temporary Compensation Payable (LIBC-501). A corrected/amended LIBC-501 must be submitted.

*Id*.

The Board refused to consider the Bureau's notice for the stated reason that it had not been presented to the WCJ and, thus, was not part of the certified record.[5] In any case, the Board found the notice irrelevant. The Board

---

[5] The dissent argues that in "fairness," the Board should have considered the Bureau's notice. However, Employer did not appeal this ruling of the Board to this Court.

4

held that Employer could not disavow the terms of the Supplemental Agreement simply because it filed the "wrong form." The Board held that the Supplemental Agreement was binding unless and until it was modified by agreement of the parties or by an order of the WCJ. Because the Supplemental Agreement provided compensation "for uncertain weeks" into the future, Employer had admitted ongoing liability for Claimant's back injury. The Board noted that the Supplemental Agreement should have been captioned as an Agreement for Compensation, but this had no bearing on the meaning and enforceability of the parties' agreement.[6]

Employer petitioned for this Court's review. On appeal,[7] it raises one issue. It contends the Board erred as a matter of law in concluding that the Supplemental Agreement altered the provisional nature of Employer's acceptance of liability for Claimant's injury.

Employer argues that the Supplemental Agreement did not have the legal effect of an Agreement for Compensation. Under Section 406.1(d) of the Act,[8] 77 P.S. §717.1(d), an employer may pay compensation payments for 90 days

---

[6] Notably, the form for a "Supplemental Agreement" is identical to that for an "Agreement for Compensation," except for the caption.

[7] This Court's review determines whether the findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or whether an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa. Cmwlth. 2003). Our scope of review of questions of law is plenary, and our standard of review is *de novo*.

[8] It provides, in relevant part:

> (d)(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department.

**(Footnote continued on the next page . . . )**

5

without admitting liability. Employer contends that it did not intend the Supplemental Agreement to extend the benefit period in the NTCP. Rather, its purpose was to return Claimant's rate of compensation to "the rate set forth in the NTCP initially issued by [Employer]." Employer Brief at 15. Employer argues that it entered into the Supplemental Agreement solely to obtain Claimant's agreement to a reduction in the disability payment set forth in the NTCP for three weeks in February. It entered the Supplemental Agreement to avoid penalties, which this Court awarded in *Gereyes v. Workers' Compensation Appeal Board (New Knight, Inc.)*, 793 A.2d 1017 (Pa. Cmwlth. 2002), because the employer had unilaterally reduced the rate of disability compensation stated in its NTCP.

At issue here is a penalty petition filed pursuant to Section 435(d)(i) of the Act,[9] 77 P.S. §991(d)(i). In a penalty petition, the claimant bears the burden

---

**(continued . . . )**

> (2) The notice of temporary compensation payable shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the notice of temporary compensation payable. The department shall, upon receipt of a notice of temporary compensation payable, send a notice to the claimant informing the claimant that:
>
> > (i) the payment of temporary compensation and the claimant's acceptance of that compensation does not mean the claimant's employer is accepting responsibility for the injury or that a compensation claim has been filed or commenced;
> >
> > (ii) the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation[.]

Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. §717.1(d).

[9] It states, in relevant part, as follows:

> (d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein

**(Footnote continued on the next page . . . )**

6

of proving that a violation of the Act has occurred. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000). The WCJ concluded that Claimant met its burden.

The WCJ reasoned that in the Supplemental Agreement, Employer accepted liability for Claimant's injury and, thus, it could not unilaterally terminate compensation. The WCJ explained as follows:

> Although [Employer] initially only provisionally accepted Claimant's injury via a [NTCP], [Employer] subsequently accepted the claim fully by entering into the Supplemental Agreement. Pursuant to the terms of the Supplemental Agreement, [Employer has] accepted liability for a January 19, 2013 work-related injury in the form of a lumbar strain, for which Claimant should be receiving temporary total disability benefits at the rate of $824.84 per week.

WCJ Decision at 2, Conclusion of Law No. 2. In affirming the WCJ, the Board relied upon *Sharon Tube Company v. Workers' Compensation Appeal Board (Buzard)*, 908 A.2d 929 (Pa. Cmwlth. 2006).

In *Buzard*, the claimant, after having been awarded compensation, returned to work. Thereafter, the claimant suffered a recurrence of his injury. The

---

**(continued . . . )**

for violations of the provisions of this act or such rules and regulations or rules of procedure:

> (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

Added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §991(d)(i).

parties executed a supplemental agreement, acknowledging the claimant's return to total disability benefits on July 28, 2003, when he left work. Several months later, the employer filed a modification petition, seeking to reduce the claimant's benefits as of July 21, 2003, onward, based on the claimant's alleged ability to work. In fact, the claimant did work the week of July 21, 2003. The claimant argued that because the supplemental agreement was dated July 28, 2003, the employer could not claim that he was able to work as of July 21, 2003. Employer argued that the agreement was dated to reflect the claimant's last day of work, not because it believed that the claimant had grounds to leave work that day.

The Board rejected the employer's argument, and this Court upheld the Board. Section 413(a) of the Act,[10] permits a modification only where there has been a change in a claimant's condition "*since* the date of the agreement." *Buzard*, 908 A.2d at 933 (emphasis in original). In so holding, we relied upon our Supreme Court's construction of Section 413(a) of the Act, where it explained:

> [I]n the case of an agreement or a notice of compensation payable, a petitioner has the burden of showing that the employe's disability has changed *after* the date of the agreement or the notice of compensation payable.

---

[10] It provides, in relevant part:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed[.]

77 P.S. §772.

8

*Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 465 A.2d 969, 971 (Pa. 1983) (internal citation omitted, emphasis in original). We also relied upon Section 407 of the Act which states, *inter alia*, that a supplemental agreement for the reinstatement or termination of compensation "shall be valid and binding unless modified or set aside as hereinafter provided." 77 P.S. §731. In short, *Buzard* established that an employer is bound by the facts stated in the supplemental agreement, including the stated date of a claimant's disability. *Buzard*, 908 A.2d at 933.

Here, the Supplemental Agreement states, as fact, that "it is now hereby agreed between parties hereto that the status of the disability of the said employee changed" on February 28, 2013. R.R. 5a. An "x" is placed before "Recurred." *Id*. The Supplemental Agreement states that Claimant will be paid $824.84 per week beginning on February 28, 2013, and then recites:

> *Compensation* payable for ___UNK ___weeks ____days; or if the future period of disability is uncertain, then *to continue at said rate until further changed by supplemental agreement, final receipt, or order of a Workers' Compensation Judge, or the Workers' Compensation Appeal Board*.

*Id*. (emphasis added). The Supplemental Agreement recites that Claimant was paid disability compensation at a rate lower than that stated in the NTCP when he worked at a light duty job for three weeks in February. *Id.* at 6a. Finally, the Supplemental Agreement concludes as follows:

> AS OF 02-18-13 CLAIMANT'S DISABILITY RECURRED TOTAL IN CHARACTER & COMPENSATION SHALL BE PAYABLE TO THE SAID EMPLOYEE AT THE RATE OF $824.84 PER WEEK FOR UNCERTAIN WEEKS.

9

> We, the undersigned, agree upon the facts represented by the above-named employee and the[] above-named employer.

*Id.* Based on these provisions of the Supplemental Agreement, the Board held that Employer could neither stop the payment of compensation nor change the rate of compensation by the issuance of a NSTC or NCD.

An NTCP is not an admission of liability, and Employer was entitled to file a NSTC and a NCD any time before the expiration of the 90-day period of temporary compensation. It is also the case that Employer agreed "to continue [to pay compensation] at said rate until further changed by supplemental agreement, final receipt, or order of a [WCJ] or the [Board]." R.R. 5a. These four documents constitute the entire record in this case.

As a consequence, we know nothing about the circumstances that led Employer's claim adjuster to present the Supplemental Agreement to Claimant. Under *Gereyes*, an employer's unilateral reduction in an NTCP's stated disability rate violates the Act and subjects that employer to penalties.[11] Employer contends that it intended the Supplemental Agreement, which gave Claimant's after-the-fact *imprimatur* to the reduction for the period February 11, 2013, to February 25, 2013, to avoid the *Gereyes* result. Claimant responds that Employer should have filled out the Supplemental Agreement to show that the reinstatement was only for a maximum of 90 days, if that had been its intent.

---

[11] In *Gereyes*, 793 A.2d 1017, the employer issued a NTCP and paid the claimant full disability. Shortly thereafter, the claimant returned to work, and the employer unilaterally reduced the benefit amount set forth in the NTCP. We held that the employer violated the Act by unilaterally reducing the amount of compensation paid set forth in the NTCP without the claimant's agreement and awarded penalties to the claimant.

The absence of any evidentiary record impedes effective appellate review. The Supplemental Agreement was executed, apparently, without the knowledge or advice of either party's counsel.[12] It is not known why Employer did not file an amended NTCP (LIPC-501), as suggested by the Bureau.[13] Likewise, the record does not support the Board's supposition that Employer should have used the form for an Agreement for Compensation instead of a Supplemental Agreement.

The intentions of either Claimant or Employer cannot be discerned solely from the Supplemental Agreement. Accordingly, we vacate the Board's order and remand for the development of a record that can resolve whether the Supplemental Agreement was a mutual mistake of the parties and, if so, whether Employer's NCD was issued within the 90-day deadline.

_____
MARY HANNAH LEAVITT, President Judge

---

[12] Employer claims that the Supplemental Agreement was a mistake, without any evidence to support that claim. Upon remand, a full record needs to be made, not one that favors only Employer. Claimant may have a different version of the facts that led to the execution of the Supplement Agreement.

[13] Given this Court's ruling in *Gereyes*, it is not clear that the Bureau's suggestion relieves an employer of liability for a unilateral reduction in the rate of benefits set forth in a NTCP.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank Martz Coach Company,       :
             Petitioner     :
                            :
        v.              : No. 1555 C.D. 2015
                            :
Workers' Compensation Appeal   :
Board (Avila),                :
             Respondent   :

# **O R D E R**

AND NOW, this 13th day of April, 2017, the order of the Workers' Compensation Appeal Board, dated July 28, 2015, is hereby VACATED and the matter REMANDED for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

Frank Martz Coach Company, : 
                      Petitioner : 
                                 : 
             v. : 
                                 : 
Workers' Compensation Appeal : 
Board (Avila), :   No. 1555 C.D. 2015 
                Respondent :   Submitted: March 24, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                                 FILED: April 13, 2017


Although I agree that the Workers' Compensation (WC) Appeal Board's (Board) order should be vacated and the matter remanded for the parties to present evidence with respect to the timeliness of the Notice Stopping Temporary Compensation (NSTC) and the Notice of Workers' Compensation Denial (NCD), I respectfully dissent from the Majority's directive that the matter be remanded to determine the intent of the parties with respect to the Supplemental Agreement for Compensation for Disability or Permanent Injury (Supplemental Agreement). The Majority concludes that a remand is warranted on that issue because Julio Avila (Claimant) "**may have another version of the facts**, *i.e.*, that the 'mistake' was using the form for a supplemental agreement when the form for an agreement for compensation should have been used." Majority Op. at 11 (emphasis added). I disagree because: (1) Claimant did not raise that argument either before the Board or

this Court; and (2) the WC Act (Act),[1] and the WC Bureau's (Bureau) rejection of the Supplemental Agreement support Frank Martz Coach Company's (Employer) contention. Thus, I believe this Court should vacate the Board's order and remand the matter for the sole purpose of litigating the timeliness issue.

On February 5, 2013, Employer issued a Notice of Temporary Compensation Payable (NTCP) accepting Claimant's January 19, 2013 work-related injury described as a lumbar strain. Claimant began receiving temporary total disability benefits as of January 24, 2013 at the rate of $824.84 per week, based upon an average weekly wage of $1,237.20. Thereafter, Employer and Claimant entered into the March 12, 2013 Supplemental Agreement which reduced Claimant's WC benefits to temporary partial disability at varying rates from February 11, 2013 through February 27, 2013 due to Claimant's return to work, with total disability recurring as of February 28, 2013, and Claimant returning to temporary total disability at the rate of $824.84 per week for uncertain weeks. Employer filed the Supplemental Agreement with the Bureau. On April 22, 2013, Employer issued an NSTC and an NCD. Claimant's benefits were terminated as of April 22, 2013.

On April 26, 2013, **Claimant filed a penalty petition** (Petition) alleging that, as of April 22, 2013, Employer violated the Act by unilaterally suspending Claimant's benefits **based on a late and incorrect denial of Claimant's accepted work injury**. The Workers' Compensation Judge (WCJ) held a hearing on May 28, 2013. Importantly, at the beginning of the hearing, the WCJ introduced the Supplemental Agreement. Neither Counsel was aware of the Supplemental Agreement's existence as evidenced by the following exchange:

ATTORNEY VENTRE [Employer's Counsel]:

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

Judge, to be perfectly frankly [sic], **I didn't even know there was a Supplemental Agreement until you just mentioned it as one of the Bureau Exhibits**. The only- - -

JUDGE HEMAK [WCJ]:

Here, I'll let you take a look at it.

ATTORNEY VENTRE:

Please. May I approach?

JUDGE HEMAK:

You may. **Claimant's Counsel was unaware of it as well**.

ATTORNEY VENTRE:

Thank you, Your Honor.

Reproduced Record (R.R.) at 27a-28a (emphasis added). Clearly, since **Claimant's Counsel was unaware of the Supplemental Agreement's existence, he was not arguing that Employer violated the Act based thereon**.[2] Because neither counsel was aware of the Supplemental Agreement, they were prepared to argue only what was in the Petition which made no reference to the Supplemental Agreement. In the Petition, **Claimant stated as the "reason[]" for his claim**:

> [Employer] has unilaterally suspended benefits based on a late and incorrect denial of Claimant's accepted work injury. **Claimant's injury was accepted by way of** [an **NTCP**]. The 90 days following which elapsed on April 19, 2013. **The denial was** improperly issued and **late, thus having no effect**. Claimant is seeking an immediate reinstatement of benefits along with penalties and counsel fees.

Original Record (O.R.) at 2, Claimant's Petition (emphasis added). In addition, the Petition gave Claimant the opportunity to state the basis for which WC benefits were

___

[2] The Majority states that Claimant "amended his [P]etition to add the contention that the Supplemental Agreement precluded Employer from unilaterally terminating compensation." Majority Op. at 3. However, Claimant's Counsel made no such amendment. Claimant's Counsel merely argued that the Supplemental Agreement was controlling after acknowledging the Supplemental Agreement which he did not know existed before that time. *See* R.R. at 24a-25a.

currently being paid, and provided the following options: "Notice of Compensation Payable [(NCP)] dated[;] Agreement dated[;] **Supplemental Agreement dated**[;] Judge's Award dated[;] [and] Court order dated[.]" *Id.* (emphasis added). **Claimant selected none of these options**.

The law is well-established that "[a] claimant who files a penalty petition must first meet his initial burden of proving a violation of the Act or the attendant regulations occurred; the burden then shifts to the employer to prove the violation did not occur." *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger),* 38 A.3d 1037, 1047 (Pa. Cmwlth. 2011). Here, Claimant asserts Employer violated the Act by unilaterally stopping his WC benefit payments.

Section 406.1 of the Act[3] provides, in relevant part:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a [NCP] as provided in [S]ection 407 [of the Act] or pursuant to a [NTCP] as set forth in subsection (d), on forms prescribed by the [D]epartment [of Labor and Industry (Department)] and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum. Any payment of compensation prior or subsequent to an agreement or [NCP] or a [NTCP] or greater in amount than provided therein shall, to the extent of the amount of such payment or payments, discharge the liability of the employer with respect to such case.

. . . .

(d)(1) **In any instance where an employer is uncertain whether a claim is compensable under [the Act] or is**

_____

[3] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

**uncertain of the extent of its liability under [the Act], the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a [NTCP] as prescribed by the [D]epartment**.

(2) The [NTCP] shall be sent to the claimant and a copy filed with the [D]epartment and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the [NTCP]. The [D]epartment shall, upon receipt of a [NTCP], send a notice to the claimant informing the claimant that:

(i) the payment of temporary compensation and the claimant's acceptance of that compensation does not mean the claimant's employer is accepting responsibility for the injury or that a compensation claim has been filed or commenced;

(ii) **the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation**; and

(iii) the claimant may need to file a claim petition in a timely fashion under [S]ection 315 [of the Act], enter into an agreement with his employer or receive a [NCP] from his employer to ensure continuation of compensation payments.

(3) Payments of temporary compensation shall commence and the [NTCP] shall be sent within the time set forth in clause (a).

(4) **Payments of temporary compensation may continue until such time as the employer decides to controvert the claim**.

. . . .

(6) If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable.

77 P.S. § 717.1 (emphasis added). Pursuant to Section 121.7a(c) of the Bureau's Regulations:

> To modify a [NTCP], Form LIBC-501, an employer shall file an amended [NTCP], Form LIBC-501, with the Bureau during the 90-day temporary compensation payable period. The amended [NTCP], Form LIBC-501, shall be clearly identified as 'Amended' and may have only the insurer's signature.

34 Pa. Code § 121.7a(c). Under Section 121.17(b) of the Bureau's Regulations:

> Termination, suspension, modification or other change in compensation may be accomplished by filing with the Bureau a Supplemental Agreement for Compensation for Disability or Permanent Injury, Form LIBC-337. **A Supplemental Agreement for Compensation for Disability or Permanent Injury,** Form LIBC-337, **may be used to change an Agreement for Compensation for Disability or Permanent Injury**, Form LIBC-336, **a Supplemental Agreement for Compensation for Disability or Permanent Injury**, Form LIBC-337, an **Agreement for Compensation for Death**, Form LIBC-338, **a Notice of Compensation Payable**, Form LIBC-495, or an award. . . .

34 Pa. Code § 121.17(b) (emphasis added). Finally, Section 407 of the Act states:

> On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under [the Act] . . . .
>
> Where payment of compensation is commenced without an agreement, the employer or insurer shall simultaneously give [a NCP] to the employe or his dependent, on a form prescribed by the [D]epartment, identifying such payments as compensation under [the Act] and shall forthwith furnish a copy or copies to the [D]epartment as required by rules and regulations. . . .
>
> All [NCPs] and agreements for compensation and all supplemental agreements for the modification, suspension, reinstatement, or termination thereof, and all receipts

executed by any injured employe of whatever age, or by any dependent to whom compensation is payable under [Section 307 of the Act, 77 P.S. § 561], and who has attained the age of sixteen years, shall be valid and binding unless modified or set aside as hereinafter provided.

77 P.S. § 731.

In the instant case, the WCJ concluded that Employer violated the Act by stopping Claimant's benefits pursuant to the NSTC and NCD it filed. The WCJ reasoned that the Supplemental Agreement's filing reflected Employer's acceptance of liability and, thus, precluded Employer from thereafter filing the NSTC and NCD. However, based upon the above-quoted law, because Employer issued an NTCP, the filing of the Supplemental Agreement as described in Section 121.17(b) of the Bureau's Regulations was improper. Rather, Employer should have filed an Amended NTCP pursuant to Section 121.7a(c) of the Bureau's Regulations in order to modify Claimant's benefits for the period beginning February 11, 2013.

Notwithstanding, the WCJ and the Board, recognizing that the Supplemental Agreement was not the proper form, accepted it and deemed it an Agreement for Compensation. Indeed, the Board stated:

> Although it is acknowledged that the parties executed and filed a [S]upplemental [A]greement rather than an [A]greement for [C]ompensation, we believe that giving effect to the parties' [Supplemental] Agreement avoids what the courts have condemned as exalting form over substance, . . . and is consistent with the remedial purposes of the Act.

Board Dec. at 5. Rather than reject the form as improper, as the Bureau did which will be discussed below, or ascertain the parties' intent, the WCJ and the Board reclassified the Supplemental Agreement as an Agreement of Compensation with no evidence to support this determination and also without any record evidence, and determined that the Employer accepted liability. However, **the Supplemental Agreement's terms do not evidence Employer's acceptance of liability**. Rather,

the Supplemental Agreement changed Claimant's benefits because of his return to work. Thus, there is no substantiated evidence to support the determination that the Employer accepted liability for Claimant's injury.

In fact, the Bureau, recognizing that Employer filed the wrong form, rejected the Supplemental Agreement. The Board opined:

> While [Employer] further alleges that the Bureau rejected the filing[] of the Supplemental Agreement form as improper based on the procedural posture of this case, we cannot agree that the Bureau's alleged rejection of the form could be dispositive, as [Employer] does not argue that the Supplemental Agreement lacked any necessary information, and as we understand from [*Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.),* 465 A.2d 969 (Pa. 1983)] and *Bradley*[4] that an employer's execution and filing of the document with the Bureau are the actions upon which liability is based, and thus we reject [Employer's] argument.

Board Dec. at 6 (footnote omitted).

The Board's reliance on *Beissel* is misplaced. The *Beissel* Court held that an NCP filed by an employer, who had an opportunity to and, in fact, did investigate the cause of an employee's disability, constituted an admission of the employer's liability and operated to preclude the employer, under the guise of a termination petition, from later contradicting in court precisely that which the employer admitted in its NCP.

In addition, the Majority cites *Sharon Tube Company v. Workers' Compensation Appeal Board (Buzard)*, 908 A.2d 929 (Pa. Cmwlth. 2006), for its conclusion: "an employer is bound by the facts stated in the supplemental agreement, including the stated date of a claimant's disability." Majority Op. at 9. However, the first paragraph of Section 413(a) of the Act authorizes an agreement to be modified or

---

[4] Because this is the only reference to *Bradley* in the Board's decision, we have no further citation.

AEC - 8 -

set aside based upon a material mistake of fact or law. *See* 77 P.S. § 771. Here, Employer asserted a mistake.

Employer expressly acknowledged in its brief

> that **a Supplemental Agreement was not the appropriate Bureau document to utilize at that juncture**. As the Bureau advised in its Notice of Rejected Document, in order to modify the terms of **an NTCP**[,] **an Amended NTCP should have been issued**. And in point of fact, [Employer] could have done so unilaterally. *See* [Section 121.7a(c).3 of the Bureau's Regulations,] 34 Pa. Code §[]121.7a(c).3.

Employer Br. at 15-16 (emphasis and italics added).

With regard to the Bureau's rejection of the Supplemental Agreement, the Board added:

> In this respect[,] we note that while [Employer] has attached a document to its [b]rief filed with the Board on [a]ppeal, which document it alleges was issued by the Bureau, we are unable to consider such a document as it is not included in the evidentiary record certified to the Board on [a]ppeal herein.

Board Dec. at 6 n.5.

Notably, as Employer's Counsel was not aware that a Supplemental Agreement existed prior to the WCJ hearing, he would have no reason to present the Bureau's "NOTICE OF REJECTED DOCUMENT" (Notice), wherein the Bureau expressly rejected the Supplemental Agreement because it was an "Improperly Filed Form" as the "Claim is in a temporary status." O.R. at 20. Under the circumstances, since the WCJ offered and admitted the Supplemental Agreement into the record on his own accord, as a matter of reviewing all pertinent evidence and fairness to the parties, the Board should also have considered the Bureau's Notice. **In fact, the Board did include the Notice in its original record filed with this Court**, which it

certified to be "full, entire and complete as the same remains on file in the [Bureau]."

O.R. at 40. The Notice expressly provided:

> IMPORTANT: Claim is in a temporary status. A Supplemental Agreement . . . cannot be used to correct/amend a [NTCP]. A corrected/amended [NTCP] must be submitted.
>
> **To accept or deny liability**, . . . **you must timely file one of the following to stop temporary payments**:
>
> (1) **A [NSTC], and a [NCD]** . . . .
>
> (2) A [NCP].
>
> (3) An Agreement for Compensation . . . .

O.R. at 20 (emphasis added). **As the Bureau expressly directed in its Notice, Employer filed an NSTC and an NCD for which the WCJ penalized Employer**.

More importantly, and **as the Bureau specifically recognized, the filing of an improper form cannot convert the NTCP to an NCP when that document contains no acceptance of liability**. Notwithstanding, the Supplemental Agreement cannot be the controlling document because the Bureau's Regulations clearly provide that the Supplemental Agreement was procedurally improper. *See* 34 Pa. Code § 121.7a(c), 34 Pa. Code § 121.17(b); *see also* 77 P.S. § 731.

> '[W]hen construing a statute, we must follow the letter of the statute if its words are unambiguous[.]' *Velocity Express v. Pa. Human Relations Comm'n,* 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004) (quoting *McClellan v. Health Maint. Org. of Pa., . . .* 686 A.2d 801, 805 ([Pa.] 1996)).
>
>> We are mindful that, when ascertaining the General Assembly's intent with regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute that the agency is charged to enforce. However,

[courts] need not give deference to an agency where its construction of a statute frustrates legislative intent. Therefore, although courts often defer to an agency's interpretation of the statutes it administers, where . . . the meaning of the statute is a question of law for the court, when convinced that the agency's interpretation is unwise or erroneous, that deference is unwarranted.

*Rosen v. Bureau of [Prof'l] [&] Occupational Affairs, State Architects Licensure Bd.,* 763 A.2d 962, 968 (Pa. Cmwlth. 2000) (citation omitted), . . . 781 A.2d 150 ([Pa.] 2001). Such is the case here.

*Velocity Express,* 853 A.2d at 1185 (citations omitted). Further, '[i]t is well settled law that an agency's substantive regulations . . . have the force and effect of law.' *Eastwood Nursing [&] Rehab. Ctr. v. Dep't of Pub. Welfare,* 910 A.2d 134, 142 (Pa. Cmwlth. 2006).

*Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 526-27 (Pa. Cmwlth. 2016).

Because the law and the evidence support Employer's contention that the Supplemental Agreement was filed inadvertently and that Employer should have filed an amended NCP, and Claimant did not argue "that the 'mistake' was using the form for a supplemental agreement when the form for an agreement for compensation should have been used[,]" Majority Op. at 11, the Majority erred in concluding that a remand is warranted to determine the intent of the parties' in filing the Supplemental Agreement. Accordingly, I would vacate the Board's order and remand the matter to the Board for remand to the WCJ to determine whether the NSTC and NCD were timely filed and, thus, valid.

_____
ANNE E. COVEY, Judge

AEC - 11 -