# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danielle Wolfe,               :
             Petitioner       :
                                :
          v.                :     No. 432 C.D. 2021
                                :     Submitted: December 3, 2021
Martellas Pharmacy (Workers'    :
Compensation Appeal Board),      :
             Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COHN JUBELIRER              FILED: August 31, 2022

Danielle Wolfe (Claimant) petitions for review of the March 26, 2021 Order of the Workers' Compensation Appeal Board (Board), which, in relevant part, reversed the decision of a Workers' Compensation Judge (WCJ) that had denied Martellas Pharmacy's (Employer) Petition to Terminate Benefits (Termination Petition), and reduced the amount of unreasonable contest attorney's fees the WCJ had awarded. On appeal, Claimant argues that the Board erred in determining that the testimony of Employer's medical expert could legally support the termination of Claimant's benefits as of August 10, 2017, and in making a corresponding reduction in the awarded unreasonable contest attorney's fees. Upon review, we affirm.

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

## I. BACKGROUND

### A. History and Procedure

Claimant worked for Employer as a cashier and was injured on June 10, 2017, when a six-foot metal gate she was raising fell and struck her on the top of her head. Claimant finished her shift but has not returned to work. Claimant began receiving workers' compensation benefits on June 12, 2017, after Employer initially recognized her injury, described as a skull contusion, in a June 28, 2017 Notice of Temporary Compensation Payable (NTCP) issued pursuant to Section 406.1(d)(6) of the Workers' Compensation Act (Act).[2] Employer did not issue a Notice Stopping Temporary Compensation (NSTC), but issued a Medical-Only Notice of Compensation Payable (MO-NCP)[3] on September 8, 2017, at which time Claimant stopped receiving indemnity benefits. Claimant filed a Reinstatement Petition and Penalty Petition, asserting that Employer's failure to pay indemnity benefits pursuant to an "open" Notice of Compensation Payable (NCP) and failure to pay for medical treatment related to the work injury violated the Act. (WCJ Decision, Finding of Fact (FOF) ¶ 4.)[4] In addition, Claimant requested the assessment of unreasonable contest attorney's fees. Employer filed answers that denied the material allegations of Claimant's petitions. On January 9, 2018, Employer filed the Termination Petition alleging that Claimant had fully recovered from the work injury as of August 10, 2017, based on the opinion of John Talbott, M.D. (Dr. Talbott), who conducted an independent medical evaluation (IME) of Claimant on that date.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(d)(6).

[3] The MO-NCP is found in the Certified Record at Item No. 49, pages 3-4. We note that the September 8, 2017 MO-NCP in the Reproduced Record at pages 3a-4a uses the second page from the NTCP issued June 28, 2017.

[4] The WCJ Decision is found in the Certified Record at Item No. 11 and in the Reproduced Record at pages 212a-25a.

(*Id.* ¶¶ 5, 18.) The WCJ held multiple hearings, at which both parties presented evidence.

### B. *Proceedings Before the WCJ*

Claimant testified to the following.[5] Claimant was opening the store and she pushed a six-foot metal gate up, bent down to unlock a door, and the gate came down striking her on her head. After Claimant sustained the work injury, she saw her family doctor and then treated with Jonathan French, M.D. (Dr. French), who recommended vestibular and vision therapy, which Claimant still engages in along with daily home exercises. Claimant experiences double vision and dizziness that occurs prior to migraine headaches several times per week, which are triggered by excessive walking and driving. Claimant acknowledged having been diagnosed with and treated for migraine headaches prior to the work injury, and that she asked that her hours be reduced and frequently missed work because of her pre-work injury medical condition. Claimant's symptoms after the work injury differed from the symptoms from which she suffered prior to the work injury. Claimant was restricted from working on June 12, 2017. Sometime after Claimant was injured at work, she spoke with Employer's operations manager (Supervisor), who offered her part-time work as a clerk at Employer's Franklin Street location, where she had been working. Claimant declined to work at the Franklin Street location, and instead asked to work at Employer's Windber location because it was closer and involved less workload.

---

[5] Claimant's February 27, 2018 testimony is found in the Certified Record at Item No. 18, and in the Reproduced Record at pages 19a-61a, and is summarized in Finding of Fact 7. Claimant's June 28, 2019 testimony is found in the Certified Record at Item No. 21, in the Reproduced Record at pages 157a-211a, and is summarized in Finding of Fact 9.

Claimant introduced Dr. French's report and deposition testimony.[6] Dr. French is a neuropsychologist who first examined Claimant on June 20, 2017. Dr. French explained that Claimant did not lose consciousness when struck, but did experience headache, tinnitus, nausea, photosensitivity, and dizziness. Dr. French opined that Claimant's "post-concussion symptom scale score" was severe, her ocular and vestibular motor screening was abnormal, he diagnosed her as suffering from a cerebral concussion and post-concussion syndrome, and he recommended that she not work at that time.[7] (Certified Record (C.R.) Item No. 25 at 9-10.) Dr. French saw Claimant on September 6, 2017, and released her back to work at that time with some restrictions. However, at a following visit on October 17, 2017, Claimant expressed difficulty getting to work due to driving and felt unsafe traveling to that position; thus, Dr. French disabled Claimant again.

Employer presented Supervisor's testimony at the June 28, 2019 hearing.[8] Supervisor first reached out to Claimant by letter on July 24, 2017, reminding Claimant of the proper procedures for alerting Employer of whether she intended to return, and Supervisor spoke with Claimant on September 11, 2017, concerning her return. Supervisor asked when Claimant would be going back to work, to which Claimant explained that Dr. French had restricted her work to four hours per day, five days per week, and she felt that she could not work Saturdays or evenings as she could not work alone. Claimant also claimed she could not drive any lengthy

---

[6] Dr. French's deposition testimony is in the Certified Record at Item No. 25, and in the Reproduced Record at pages 67a-104a, and is summarized in Finding of Fact 10.

[7] Claimant also introduced: the office note and report of Michelle Barnes, O.D.; an April 30, 2019 letter from Equian, which set forth a healthcare lien from UPMC Health Plan; billing statements and records; a fee agreement; a quantum meruit time record for litigation work; and litigation costs. (FOF ¶¶ 11-17.)

[8] Supervisor's testimony is found in the Certified Record at Item No. 21, and in the Reproduced Record at pages 157a-94a, and is summarized in Finding of Fact 8.

distance; thus, she could only work at the Windber location. Supervisor explained that Claimant was not employed at the Windber location, and that work was available to her at the Franklin Street location within the hour restrictions she required. Employer offered Claimant transportation as a solution to her driving restriction, but Claimant declined as she felt she could not be inside a moving vehicle at all.

Employer offered the deposition testimony of Dr. Talbott, a board-certified neurologist, who conducted an IME of Claimant on August 10, 2017.[9] Dr. Talbott performed a physical evaluation of Claimant, reviewed Claimant's medical records, and took Claimant's account of the work injury, her symptoms, and her medical history, including Claimant's ongoing issues with headaches prior to the work injury. Dr. Talbott opined that although Claimant likely had a minimal concussion at the time of the work injury, by the time of his evaluation, she was experiencing a continuation of her pre-work injury symptoms, which included headaches, sensitivity to noise and light, and nausea. (C.R. Item No. 43 at 14.) Based on this evaluation and review, Dr. Talbott concluded that Claimant had made a full recovery of the work injury as of August 10, 2017, and placed no restrictions on her ability to perform her pre-injury job.

## C. The WCJ Decision

On December 27, 2019, the WCJ issued a Decision based on the above factual and procedural background. The WCJ first rejected Claimant's legal argument that the NTCP converted to an open NCP that recognized an ongoing loss of earnings related to Claimant's work injury, due to Employer's failure to issue an NSTC.

---

[9] Dr. Talbott's deposition testimony is found in the Certified Record at Item No. 43, and in the Reproduced Record at pages 123a-56a, and is summarized in Finding of Fact 18.

(WCJ Decision, Conclusion of Law (COL) ¶ 2.) The WCJ concluded that Employer's MO-NCP properly stopped the NTCP, as authorized by Section 121.17 of the Board's Regulations (Regulations), 34 Pa. Code § 121.17, even though the Act's provisions appeared to "contemplate[] a specific notice being sent to Claimant that advised Claimant of the stoppage of temporary compensation and that Claimant must file a petition to establish any liability on the part of the employer." (*Id.*) The WCJ observed that, until a court invalidated the regulation, the WCJ would not punish Employer for following the regulation. Having concluded that Employer had validly stopped the NTCP, the WCJ then considered whether Claimant had met her burden of proving a loss of earning power and a violation of the Act as asserted in her petitions.

The WCJ found that "Claimant suffered a work-related skull contusion and concussion on June 10, 2017 that disabled her through August 10, 2017," and no longer "suffer[ed] any work-related disability after August 10, 2017," crediting Claimant's testimony as to the existence of the work injury and Dr. Talbott's testimony as to Claimant's full recovery from that injury. (FOF ¶¶ 24-25 (emphasis omitted).) The WCJ further credited Claimant's evidence regarding the unpaid medical bills, lien, and out-of-pocket expenses, and found that these bills and expenses were related to the work injury, which Employer should have paid. (*Id.* ¶ 27 (emphasis omitted).) For these reasons, the WCJ held that Claimant had met her burden of proof on the Review Petition, which was treated as a Claim Petition, with Claimant's disability benefits being suspended as of August 10, 2017, as well as on the Penalty Petition. (COL ¶¶ 4-5.)

As to the Termination Petition, the WCJ rejected Claimant's testimony, as well as the opinions of Claimant's expert, that linked any ongoing disability to the

6

work injury after August 10, 2017, and provided numerous reasons for doing so. (FOF ¶ 25.) The WCJ noted that, because Employer issued an MO-NCP, Employer had "not admit[ted] to any work-related disability. Consequently, Dr. Talbott's full-duty release was not inconsistent with the admissions in the September [8,] 2017 [MO-]NCP." (COL ¶ 6 n.3.) Although the WCJ credited Dr. Talbott's opinions, the WCJ found them to be "legally insufficient to support a finding of full recovery." (FOF ¶ 26; COL ¶ 6.) The WCJ explained

> Claimant cite[d] *Sharon Tube Co. v. [Workers' Compensation Appeal Board] (Buzard)*, 908 A.2d 929 (Pa. Cmwlth. 2006)[,] for the proposition that Employer's issuance of a[n] [MO-]NCP on September 8, 2017 precludes it from seeking a termination of benefits as of an earlier date. After reviewing the pertinent case law, I am constrained to agree. By issuing the September 8, 2017 MO[-]NCP, Employer acknowledged the existence of Claimant's skull contusion as of that date. Employer was then burdened to show "that the employe's disability has changed after the date of the agreement or the notice of compensation payable." *Id.* at 932 (quoting *Beissel v. [Workmen's Comp. Appeal Bd.] (John Wanamaker, Inc.)*, . . . 465 A.2d 969 ([Pa.] 1983)). As Dr. Talbott's opinions only support a finding of full recovery prior to the date of the [MO-]NCP, it cannot support a termination of benefits.

(COL ¶ 6 (footnote omitted).) Accordingly, the WCJ denied the Termination Petition.

Finally, the WCJ granted Claimant's request for unreasonable contest attorney's fees. The WCJ explained that although Employer had prevailed in large part, its "Termination Petition was doomed when it was filed," because even if Dr. Talbott's opinions were credited, "Employer could not prevail on its attempt to terminate Claimant's benefits as a matter of law." (*Id.* ¶ 9.) The WCJ further held that "Employer was penalized for failing to pay work-related medical expenses, even

7

though it had an open MO[-]NCP," and, therefore, the WCJ concluded that "Employer [] ha[d] unreasonably contested half of the litigation." (*Id.*)

### D. The Board's Opinion

Both parties appealed to the Board.[10] Claimant again argued that because the NTCP was never properly revoked, it converted to an NCP, and Claimant was entitled to ongoing benefits under that open NCP. Employer argued that the WCJ's findings and conclusions regarding the insufficiency of Dr. Talbott's opinion of full recovery were not supported by the record and were incorrect as a matter of law. Employer also argued that the WCJ erred in awarding unreasonable contest fees because its contest was reasonable. The Board agreed with both Claimant and Employer in part and held that

> [u]pon review, we agree that the WCJ erred in concluding that [Employer] properly stopped paying temporary compensation without issuing an NSTC. The WCJ reasoned that the regulation permits the filing of an NSTC and [a Notice of Workers' Compensation Denial (NCD)] or an NCP. [The WCJ] acknowledged Claimant's contention that the Act controls, but declined to impose a penalty on [Employer] for abiding by the regulation. We do not agree that an NSTC is not required. Notwithstanding, a penalty should be tied to avoidable, wrongful conduct, and the imposition of a penalty is within the WCJ's discretion. . . . . The WCJ found no avoidable, wrongful conduct and exercised his discretion to award no penalty.[] We therefore determine no need for appellate correction of the WCJ's Order.
>
> [Employer] argues that the WCJ erred in denying the Termination Petition. We agree.
> . . . .
>
> The date on which an NCP is issued is not an absolute bar to a termination of benefits before that date. *City of Philadelphia v.*

---

[10] The Board's Opinion is found in the Certified Record at Item No. 16, and in the Reproduced Record at pages 236a-47a.

8

[*Workers' Comp. Appeal Bd.*] *(Butler)*, 24 A.3d 1120 (Pa. Cmwlth. 2011), *appeal denied*, 37 A.3d 1197 (Pa. 2012). Where the employer does not seek to disavow the injury or repudiate the NCP, termination may be granted on a showing of full recovery even if the date of recovery precedes the filing of an NCP. *Id.*

(Board's Opinion at 5-6.) On this last point, the Board concluded that

> we do not agree that [Employer] was precluded from seeking a termination of benefits before the date of the [MO-]NCP. The WCJ accepted Claimant's argument under *Sharon Tube Co.* . . . , and found that [Employer] acknowledged the existence of Claimant's injury as of the date the NCP was issued. [The WCJ] observed in a footnote that the [MO-]NCP did not admit to any work-related disability[,] and[,] therefore, Dr. Talbott's release to full duty was not inconsistent with the admissions in the [MO-]NCP. Nevertheless, the WCJ concluded that [Employer] was required to show a change of condition after the date of the NCP[,] and[,] accordingly, Dr. Talbott's opinion could not support a finding of full recovery before the date of the NCP.

> However, the court in *Butler* analyzed the Supreme Court's ruling in *Beissel* . . . , which was cited by the court in *Sharon Tube Co.* In *Beissel*[,] the employer attempted to repudiate an NCP with new medical evidence showing that the NCP was erroneous[,] and the claimant had not suffered a work-related injury. The *Beissel* court held that the employer could not repudiate the NCP. In *Butler*, the employer did not attempt to disavow the disabling injury but only alleged a full recovery. The *Butler* court observed that there is no sound policy reason or any provision of the Act absolutely precluding a termination of benefits for a claimant who has fully recovered before an NCP is issued.

> In the present matter, the WCJ accepted Dr. Talbott's opinion but suspended indemnity benefits rather than terminating benefits. [Employer] here did not seek to disavow the injury; therefore, a termination may be granted under *Butler*.

(*Id.* at 7-8 (footnote omitted).) The Board reversed the WCJ's denial of the Termination Petition, reduced the award of counsel fees for unreasonable contest,

9

and affirmed the remainder of the WCJ's Decision. Claimant now petitions this Court for review.[11]

## II. DISCUSSION

On appeal, Claimant argues[12] that the Board erred in determining that the MO-NCP was the controlling document because Employer's failure to issue an NSTC resulted in the NTCP converting to an NCP by operation of law. Thus, according to Claimant, the NCP was the controlling document. Claimant further asserts, relying on the conversion of the NTCP into an NCP, that the Board erred in concluding that Employer met its burden of proof on the Termination Petition based on *Butler* and, instead, should have relied on *Sharon Tube Co.*, as the WCJ had. Claimant last contends that the WCJ's award of unreasonable contest fees should be reinstated because the Board's reversal of the WCJ's denial of the Termination Petition was in error.

Employer responds that Section 121.17 of the Regulations allows for the use of an MO-NCP to stop an NTCP. Employer contends that Dr. Talbott's testimony is legally sufficient to support termination, as the Board held, and specifically challenges the WCJ's determination that Dr. Talbott's testimony is not legally sufficient. Last, Employer argues that the Board's modification of attorney's fees should be affirmed because there was no error in granting the Termination Petition.

---

[11] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 n.2 (Pa. Cmwlth. 2017). We exercise plenary, *de novo* review over questions of law. *Sedgwick Claims Mgmt. Servs., Inc. v. Bureau of Workers' Comp., Fee Rev. Hearing Off. (Piszel & Bucks Cnty. Pain Ctr.)*, 185 A.3d 429, 433 n.2 (Pa. Cmwlth. 2018).

[12] We have rearranged Claimant's arguments for ease of discussion.

10

### A. Whether the Board Erred in Holding that the MO-NCP was the Controlling Document

Because Claimant's argument regarding what Employer had to prove to obtain a termination of her benefits is based on her assertion that the NTCP converted to an NCP, we first examine whether that conversion occurred. Claimant relies on Section 406.1 of the Act to argue that only the filing of an NSTC and NCD will validly revoke an NTCP, and if not filed within 90 days, the NTCP converts into an NCP. In contrast, Employer relies on Section 121.17, which allows for payments under an NTCP to be stopped through the issuance of an NCP or MO-NCP. Claimant contends that Section 121.17 cannot be contrary to the Act's provisions and, therefore, is invalid.

Section 406.1 of the Act addresses how an employer is to respond to an alleged work injury, including the issuance of, and stopping payments made pursuant to, an NTCP. Section 406.1(d)(1), (5)(i)-(iii), and (6) of the Act provides that

> (d)(1) In any instance where an employer is uncertain whether a claim is compensable under this [A]ct or is uncertain of the extent of its liability under this [A]ct, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a[n] [NTCP] as prescribed by the [Department of Labor and Industry (department)].
>
> . . . .
>
> (5)(i) If the employer ceases making payments pursuant to a[n] [NTCP], a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.
>
> (ii) This notice shall advise the claimant, that if the employer is ceasing payment of temporary compensation, that the payment of temporary

11

compensation was not an admission of liability of the employer with respect to the injury subject to the [NTCP], and the employe must file a claim to establish the liability of the employer.

(iii) If the employer ceases making payments pursuant to a[n] [NTCP], after complying with this clause, the employer and employe retain all the rights, defenses and obligations with regard to the claim subject to the [NTCP], and the payment of temporary compensation may not be used to support a claim for compensation.

. . . .

(6) If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to a[n] [NCP].

77 P.S. §717.1(d)(1), (5)(i)-(iii), (6).  Section 121.7a(a)(1)-(3) of the Regulations addresses the time and manner of issuing an NTCP.  34 Pa. Code § 121.7a(a)(1)-(3).[13]  Section 121.17(d) of the Regulations sets forth how to stop temporary payments made under an NTCP:

(d) If temporary payments made under § 121.7a (relating to [NTCP]) are stopped, the employer shall file one of the following:

---

[13] Specifically, Section 121.7a(a)(1)-(3) provides that

(a) If an employer files a[n] [NTCP], Form LIBC-501, the employer shall do all of the following simultaneously and no later than 21 days from the date the employer had notice or knowledge of the disability:

(1) Send the [NTCP], Form LIBC-501, to the employee or the employee's dependent.

(2) Pay compensation to the employee or the employee's dependent.

(3) File the [NTCP], Form LIBC-501, with the Bureau [of Workers' Compensation (Bureau)].

34 Pa. Code § 121.7a(a)(1)-(3).

12

(1) A[n] [NSTC], Form LIBC-502, and a[n] [NCD], Form LIBC-496, within 5 days of the last payment and within the 90-day temporary compensation payable period.

(2) A[n] [NCP], Form LIBC-495.

(3) An Agreement for Compensation for Disability or Permanent Injury, Form LIBC-336.

34 Pa. Code § 121.17(d). Recently, in *Raymour & Flanigan v. Workers' Compensation Appeal Board*, 264 A.3d 817 (Pa. Cmwlth. 2021), *petition for allowance of appeal denied* (Pa., No. 388 EAL 2021, filed June 27, 2022), this Court addressed the question of whether an employer may stop the payment of temporary compensation under an NTCP by issuing an MO-NCP. In that case, the claimant was injured at work on September 13, 2018, the employer issued an NTCP on October 1, 2018, and the employer paid benefits under that NTCP, but subsequently issued an MO-NCP on October 17, 2018. The claimant filed a penalty petition and reinstatement petition in November 2018, arguing the employer violated the Act and seeking the reinstatement of temporary total disability benefits. The WCJ found that, pursuant to Section 121.17(d), "there was no requirement to file a[n] [NSTC] if, during the temporary period, the employer or insurer decided to issue a[n] [NCP.]" *Id*. at 818. The Board reversed, holding that the proper method for stopping payment of benefits made under an NTCP, pursuant to Section 406.1(d)(5)(ii) of the Act and Section 121.17(d), was to issue an NSTC and an NCD within 5 days of the last payment and within the 90-day temporary compensation payable period. Then, the employer could issue an MO-NCP. Because the employer had not followed this procedure, the Board held that the NTCP converted into an NCP, which became the controlling document and entitled the claimant to ongoing wage loss benefits.

13

The employer petitioned for review, and this Court reversed. There, as here, the claimant argued that Section 121.17 was inconsistent with the Act and the Board's interpretation was correct. We disagreed, holding that the employer had complied with the Act by only filing an MO-NCP. *Id.* at 822-23. We explained that

> the Board erred in applying Section 406.1(d)(5)(i)-(ii) in this circumstance. That Section requires that when an employer ceases making payments pursuant to a[n] [NTCP], it must send a notice advising a claimant (1) that the payment of temporary compensation did not constitute an admission and (2) that the employee must file a claim to establish liability of the employer. However, in the case where a[n] [MO-NCP] is filed, the first statement – that the temporary compensation does not constitute an admission – is legally incorrect, as the employer is acknowledging the injury. . . . Further, the second statement – that an employee must file a claim to establish liability – is equally untrue. . . . Accordingly, we believe that Section 406.1(d)(5) is simply inapplicable here, and that Section 121.17(d) of the Bureau's regulations properly requires that an employer either comply with Section 406.1(d)(5) or file a[n] [NCP], of which a[n] [MO-NCP] is one variety. The only remaining function of the notices . . . is to notify a *pro se* claimant of the fact that indemnity benefits have ceased. To the extent that the checkbox on the [MO-NCP] informed [the c]laimant that only compensation for medical treatment, and not loss of wages, would be paid . . . it would seem that this purpose was accomplished by that notice alone.

*Id.* at 822 (emphasis omitted). We observed that where an MO-NCP is issued, the other notices (the NSTC and/or NCD) contained misstatements of the law and would cause confusion and misinformation to the claimant regarding his or her next steps, which would be contrary to the humanitarian purpose of the Act and "lead to an absurd result." *Id.* at 823.

This Court applied *Raymour & Flanigan* in *School District of Philadelphia v. Holman (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 23 C.D. 2020,

14

filed April 19, 2022).[14]  In *Holman*, the claimant was injured at work, the employer issued an NTCP, and the employer later issued an MO-NCP and stopped paying wage benefits within the 90-day period.  The claimant filed a penalty petition, arguing that the employer violated the Act by stopping the payment of benefits because the claimant never received an NSTC.  The employer responded that by issuing an MO-NCP within 90 days of the NTCP, it had complied with Section 121.17(d) and had not otherwise violated the Act.  The WCJ denied the penalty petition, but the Board reversed based on its conclusion that an NSTC and an NCD had to be issued pursuant to Section 406.1(d) of the Act.  We reversed, reasoning that *Raymour & Flanigan* had addressed the issue squarely, and that, as a result, the employer had not violated the Act or regulations by issuing an MO-NCP to stop the temporary compensation payment.  *Holman*, slip op. at 9-10.[15]

As this Court explained in *Holman*, our analysis in *Raymour & Flanigan* is "on point and controlling here," and we are bound to follow this precedent unless overruled.  *Id.*, slip op. at 9.  *See also Crocker v. Workers' Comp. Appeal Bd. (Ga. Pac. LLC)*, 225 A.3d 1201, 1210 (Pa. Cmwlth. 2020) (quoting *Pries v. Workers' Comp. Appeal Bd. (Verizon Pa.)*, 903 A.2d 136, 144 (Pa. Cmwlth. 2006)) ("'[W]e are bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated.'").  Here, as in *Raymour & Flanigan*, and *Holman*, Employer issued an MO-NCP within the 90-day period pursuant to Section 121.17(d)(1), and therefore, the NTCP did not convert to an NCP.  *Raymour & Flanigan*, 264 A.3d at 823; *Holman*, slip op. at 9.  As a result,

---

[14] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court may be cited for its persuasive value.

[15] The claimant in *Holman* filed a petition for allowance of appeal at Supreme Court Docket No. 134 EAL 2022.

15

the MO-NCP was the controlling document in this case, and Claimant's contrary arguments are unavailing.[16]

### B. Whether the Board Erred in Holding that Dr. Talbott's Testimony Supported the Termination of Benefits

We now turn to whether Employer could meet its burden of proof on the Termination Petition based on Dr. Talbott's finding of full recovery as of a date prior to the issuance of an MO-NCP. "To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased or that any current disability is unrelated to the claimant's work injury." *Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991, 995 (Pa. Cmwlth. 2005). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from [the] work-related injur[y]." *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). Here, there is no dispute that Dr. Talbott credibly opined that Claimant fully recovered from the work injury as of August 10, 2017. Rather, the dispute is whether such testimony is legally sufficient, under *Beissel* and *Sharon Tube Co.*, or *Butler,* to support the termination of benefits based on Employer's issuance of the September 8, 2017 MO-NCP. To resolve this dispute, we begin with a review of the relevant caselaw.

In *Beissel*, our Supreme Court addressed an employer's attempt to terminate benefits for an injury and disability accepted in an NCP based on a medical opinion which occurred years later. The claimant slipped and fell at work, injured her back, had back surgery, and suffered a loss of wages. After the claimant filed a claim

---

[16] Although the Board erred in holding that the MO-NCP did not stop the NTCP, such error was harmless because the Board considered the MO-NCP, rather than a converted NCP, as the operative document.

petition, the parties settled, and the employer issued an NCP that accepted liability for the lower back injury. Two years later, the employer filed a petition to terminate, arguing, based on a recently obtained medical opinion, that the claimant's condition was unrelated, and had always been unrelated, to the work fall because it was caused by a "coughing and laughing spell." *Beissel*, 465 A.2d at 970. The WCJ accepted the employer's evidence and terminated the claimant's benefits. The Board and this Court affirmed. The Supreme Court reversed, holding that the employer could not alter the admissions it made in the NCP without showing a change in the claimant's disability "**after** the date of agreement or [NCP]." *Id*. at 971 (emphasis in original). The *Beissel* court explained that

> [j]ust as we have held that the burden is on a[n employer] to prove that an employe's disability has increased or decreased **after** the filing of a[n] [NCP], we also hold that a[n employer] has the burden of proving that an independent cause of an employe's disability arose **after** the filing of a[n] [NCP] if the [employer] is seeking to justify the termination of benefits on the grounds that the employe's disability is no longer work-related. To hold otherwise would afford the employer an opportunity to litigate that which it has already admitted. This we will not do.

*Id*. at 972 (emphasis in original). Thus, the Supreme Court made clear that an employer's admissions in an NCP, there that the claimant sustained a disabling work injury, were binding and could not be contradicted unless a change in a claimant's disability was established.

This Court, in *Sharon Tube Co.*, applied *Beissel* to a situation involving a supplemental agreement that acknowledged that a claimant's total disability had recurred as of a particular date. In that case, the claimant suffered a work injury on November 13, 1995, and a WCJ awarded benefits. On July 21, 2003, he returned to work with a loss of wages, and the employer modified his benefits to reflect his

17

earned wages, although no supplemental agreement was filed at that time. *Sharon Tube Co.*, 908 A.2d at 929 n.1. The claimant was taken off work by his doctor on July 28, 2003. *Id.* at 929-30. On August 11, 2003, "the parties executed a [s]upplemental [a]greement . . . acknowledging a recurrence of [his] total disability effective July 28, 2003." *Id.* at 930. The agreement stated that as of July 28, 2003, "disability recurred total in character [and] compensation shall be payable to the [claimant]." *Id.* On October 8, 2003, the employer filed a modification petition, seeking reduction of the claimant's benefits as of July 21, 2003, based on his return to work that day. *Id.* The claimant objected, asserting that in the supplemental agreement the employer admitted that the claimant was totally disabled as of July 28, 2003, and, therefore, the employer was estopped from making any modification for weeks other than July 21, 2003, to July 27, 2003. *Id.* The employer argued that the supplemental agreement was merely reflecting its obligation to resume paying total disability benefits as a result of the claimant stopping work. *Id.* The employer offered several doctors' examinations of the claimant, and the claimant offered his own doctor's opinion that he was not capable of performing any work due to the work injury.

The WCJ rejected the claimant's testimony and granted the employer's modification petition. The Board reversed, holding that the employer was required to show that the claimant had regained all or some of his earning capacity after July 28, 2003, the date the employer acknowledged that the claimant had again become totally disabled. *Id.* at 931. Due to the employer's failure to show medical evidence of the claimant's condition or his availability to work **after** that date, the Board reversed. On appeal, the employer again asserted that the supplemental agreement did not preclude it from seeking to modify benefits prior to July 28, 2003. This

18

Court disagreed, explaining that "[S]ection 413(a) authorizes the WCJ to modify an agreement only upon proof that a claimant's condition has changed **since the date of the agreement**." *Id*. at 933 (emphasis added). Thus, as in *Beissel*, *Sharon Tube Co.* involved a situation where the employer expressly recognized a claimant's condition as of a particular date, and the employer's attempt to make assertions that were contrary to those that were expressly recognized without establishing a change in circumstances.

This Court subsequently considered, in *Butler*, "how the date of an NCP impacts an employer's ability to terminate or suspend a claimant's benefits" under *Beissel*. *Butler*, 24 A.3d at 1125 (emphasis omitted). The claimant in *Butler* was in a work-related car accident on September 28, 1995. On October 19, 1995, the employer sent the claimant to a doctor who examined her and found her to be fully recovered. Not finding objective evidence to support the claimant's continued complaints of head and back pain, that doctor referred the claimant to a second doctor, who examined the claimant and concurred that the claimant was fully recovered. On November 7, 1995, the employer issued an NCP acknowledging that the claimant had suffered a work injury on September 28, 1995, described as bruises to the neck, back, and head, and provided for a weekly compensation rate. However, concerning the inception date of disability compensation, the "[e]mployer placed an asterisk, directing the reader to the 'Remarks' section of the NCP. There, [the e]mployer stated that [the c]laimant 'received salary in lieu of workers' compensation benefits under Regulation 32.'" *Id.* at 1122.

The next month, the employer filed a termination petition asserting that the claimant had fully recovered as of October 20, 1995. Based on the employer's medical evidence, the WCJ found that the claimant was fully recovered as of that

19

date. After several appeals, reversal, and remand,[17] the WCJ again found that the claimant did not suffer any residual effects of her work injury and was capable of returning to work. Ultimately, the Board reversed, however, holding that under *Beissel*, the employer was required to show that the claimant's physical condition had improved **after** the date the NCP was issued. *Id*. at 1123.

On appeal to this Court, the employer argued that the Board misapplied the Supreme Court's decision in *Beissel*, and that the employer had proven what it was required to prove – that the claimant was recovered and able to work. We noted, at the outset, that "[a]n NCP acknowledges the existence of a work injury, and it can limit this acknowledgment to a[n MO-NCP], meaning that the injury did not result in a loss of earning power. . . . The NCP frames the issues in a termination or suspension proceeding." *Id*. at 1124 (citation omitted). We emphasized that the employer's evidence in *Beissel* did not focus on establishing that the claimant "had recovered from the work-related disability identified in the NCP; **rather, it showed that the NCP was erroneous and that the [c]laimant had not suffered a work-related injury**." *Butler*, 24 A.3d at 1125 (emphasis added). The *Butler* court explained that "[t]he principle established in *Beissel* is that an employer is bound by the contents of its own NCP. The employer cannot repudiate **the substance** of its own NCP and its acceptance of liability for a work injury." *Id*. (emphasis added; footnote omitted). We noted that the employer in *Butler* did not disavow the disabling work injury, nor did it repudiate the contents of the NCP. *Id*. at 1126. Rather, applying *Beissel*'s principle to the facts in *Butler*, we held that

> [the e]mployer's NCP acknowledged that [the c]laimant suffered a
> disabling work injury. The NCP did not provide a starting date for

---

[17] *Butler* had a lengthy procedural history, and we recite only what is necessary for our purposes here.

20

compensation because [the e]mployer explained that it had paid [the c]laimant Injured on Duty benefits "in lieu of workers' compensation." . . . Most critically, the NCP **did not** state that [the c]laimant remained disabled as of November 7, 1995, on which date [the e]mployer filed its NCP with the Bureau.

*Id*. at 1126 (emphasis added).  Importantly, the *Butler* court reasoned:

> **It does not advance sound policy, or any provision of the Act, to have the date of an NCP's issuance stand as an absolute barrier to a termination of benefits for a claimant who is fully recovered**. . . . [S]uch a holding exalts form over substance.  The substance of the NCP is that [the c]laimant was disabled and entitled to benefits.  The NCP *did not* recite that [the e]mployer considered [the c]laimant still unable to work as of November 7, 1995, when it issued the NCP.  **Had the NCP contained such statement, the outcome here might be different**.

*Id*. (bold emphasis added).  We held that "the date of an NCP does not preclude the termination, suspension[,] or modification of benefits as of a date that predates the filing of an NCP," and therefore, the employer properly established the claimant's recovery as of October 20, 1995.  *Id*. at 1127.

Claimant argues that pursuant to *Beissel* and *Sharon Tube Co.*, the WCJ correctly found Dr. Talbott's testimony insufficient to support a termination of benefits.  Claimant contends that Employer accepted Claimant's work injury on September 8, 2017, by issuing the MO-NCP, which acknowledged that compensation for medical treatment would be paid.  Claimant further asserts, based on her contention that the NTCP converted into an NCP, that Employer accepted Claimant's ongoing loss of earnings as a result of the work injury.  This fact, Claimant asserts, distinguishes this matter from *Butler*.  She maintains that to terminate her benefits as of August 10, 2017, based on Dr. Talbott's finding of full recovery, would be contrary to *Beissel* and *Sharon Tube Co.* because Employer did

21

not prove a change in her condition **after** September 8, 2017. Employer responds that the Board did not err in relying on *Butler*, and that Dr. Talbott's testimony presented substantial, competent evidence to support a termination of benefits.

We disagree that *Beissel* and *Sharon Tube Co.* are controlling and that the Board erred in relying on *Butler*. First, because we have determined that the NTCP did not convert to an NCP, we look only at the MO-NCP. The WCJ and the Board both recognized that the MO-NCP issued by Employer on September 8, 2017, did not admit to any work-related disability. Specifically, the WCJ explained that "since the NCP was medical-only, Employer did not admit to any work-related disability. Consequently, Dr. Talbott's full-duty release was not inconsistent with the admissions in the September [8,] 2017 [MO-]NCP." (COL ¶ 6 n.3.) Thus, this is **not** a situation, as it had been in *Beissel* and *Sharon Tube Co.*, where Employer is seeking to disavow an admitted or agreed to work injury or related disability. Instead, Employer, similar to the employer in *Butler*, seeks only to show that full recovery occurred on August 10, 2017, based on Dr. Talbott's credited opinion that Claimant was fully recovered from her work injury and any related disability was related to her preexisting condition. Like the NCP at issue in *Butler*, the MO-NCP here **does not** expressly state that Claimant remained disabled, or even injured, as of the date the MO-NCP was issued. Rather, it recognizes that an injury occurred, and described that injury, and Employer checked the box indicating that compensation for medical treatment would be paid subject to the Act. While Claimant points to this last statement to support her argument, because compensation for medical treatment is paid under the Act only until a claimant is fully recovered from the work injury, we do not view this statement on a pre-printed form as an admission by Employer that, as of September 8, 2017, Claimant continued to need medical

22

treatment as of that date. Employer's Termination Petition is not attempting to repudiate or disavow what was accepted or admitted in the MO-NCP, and, therefore, the Board did not err in finding that *Butler*, rather than *Beissel* and *Sharon Tube Co.*, was applicable here. As a result, there was no error in the Board concluding that Employer sustained its burden of proof on the Termination Petition and that Claimant's benefits could be terminated as of August 10, 2017, based on Dr. Talbott's credited testimony.[18]

## III. CONCLUSION

Although Employer issued the MO-NCP, rather than an NSTC and an NCD, the NTCP did not automatically convert to an NCP pursuant to Section 406.1(d)(6) and *Raymour & Flanigan*. As a result, the MO-NCP was the controlling document in this case. Therefore, the Board did not err in relying on *Butler* to determine that a termination of benefits could be granted based on Dr. Talbott's credited opinion because such testimony did not reflect Employer's attempt to disavow or repudiate any admission or agreement set forth in the MO-NCP. Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[18] As a result of our conclusion that the Board did not err in holding that Employer met its burden of proof on the Termination Petition, Claimant's argument that the Board erred in reducing the award of attorney's fees necessarily fails.

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danielle Wolfe,                          :
                 Petitioner    :
                                   :
            v.                   :   No. 432 C.D. 2021
                                   :
Martellas Pharmacy (Workers'             :
Compensation Appeal Board),              :
                 Respondent    :

# **O R D E R**

    **NOW**, August 31, 2022, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER,** Judge